Good afternoon, your honors, and may it please the court. My name is Wesley Weeks. I represent the Both family, who are the petitioners in this matter. I would like to reserve two minutes for rebuttal. Okay, and just watch the clock. It counts down. Understood. Thank you, your honor. This asylum case is based on the Both family's claim that they were persecuted in Austria on account of their Romanian ethnicity. In this asylum claim, it is undisputed that the persecution was subjectively genuine. It is also undisputed that the Boths testified credibly to numerous attacks and incidents, including, for example, an attack on their 12-year-old son, D.B., that left him deaf in one ear that was on account of his Romanian ethnicity. And it was the attack by Mr. Kammerer. Is that correct? That is correct. And, for example, another one of the numerous incidents, they testified to an attack on their 11-year-old daughter, E.B., who was attacked by a group of boys in a school, also on account of her Romanian ethnicity, which wound her or ended – she ended up in the hospital for six days as a result of that attack. It is also undisputed that at least some of these attacks rose to the level of persecution. The BIA, however, denied the Boths' asylum applications because it concluded that the BIA was unable to protect them. But when all of these attacks and incidents are reviewed cumulatively, as the BIA should have done here, the record compels reversal. I would like to focus first on the incident involving the theft of the Boths' land, because I believe that places – Before you get to all of these, the substantial – I guess this is a substantial evidence argument you're going into, right? The standard for review is substantial evidence. Because I want to ask you a preliminary question, which is I thought one of the arguments you had is that the BIA did not consider the argument or the contention that Kramer was a government official. That is correct. That is one of the several arguments we presented. If the Board didn't address that argument, what do we do? Well, I think the answer is twofold. First, I think the record is sufficient for this and that satisfies the requirement that the persecution be attributable to the government in some way. Second, I would say that under this Court's precedence, such as Babala v. Ashcroft, the government attribution test is a disjunctive test. So there are two ways that we can satisfy that test. One would be the way Your Honor just mentioned by showing that Chief Kramer is a government official, which automatically should qualify or should satisfy that prong of the analysis. The other way is for this Court to conclude that regardless of whether Chief Kramer is a government official, the cumulative record shows that the government was unable and unwilling to control the various acts of persecution in this case. So your comments now are directed to that prong? That is correct. But we are certainly arguing under both prongs of that disjunctive test. Well, I have some problems with that same issue. The BIA didn't find one way or the other whether the guy's name starts with a K was a government official or not. Kromer? Chief Kramer. But the IJ did and said that he wasn't. Now, I don't know which way that cuts, whether that shows that the BIA implicitly affirmed that holding and thus there's no need were we to find error there. There would be no need to send it back to the IJ because the or would it be necessary to send it back to BIA? Similarly, if we were to find insufficient evidence that the government could control its actors, would that have to be sent back to the BIA? Would the BIA have to send it back to the IJ? Could, as you propose, I'm afraid without authority, although maybe you have some, that the petition could just be granted without sending it back either to the BIA or to the IJ. So I'm sort of concerned about well, and then I guess the third thing is if either Komar was a government actor or it was shown that the government couldn't control its actors, then the only remaining question is whether the past persecution, which everyone found was sufficient to show future persecution or did the government rebut that? Would we have to send it back in either event for the give the government a chance to rebut the presumption of future persecution? Sure. Let me take that in part. So the first part I'll address is the remand question. This court has often said a remand under Ventura is not necessary under similar facts, Bobala versus Ashcroft, Coroblina versus INS. In both of those cases, one of the problems with the agency review of the asylum application was that the agency did not conduct a cumulative analysis. And this court went ahead and said the cumulative record compels the conclusion that there was persecution here and remanded only for the discretionary determination of whether the Attorney General would grant the asylum application, even though it was determined that the applicants were, in fact, eligible under the statute. I'm sorry, which case was this? So I cited two. The first is Coroblina versus INS. That's at 158. You don't need to cite. Just remember this one. Oh, sure. And then Bobala versus Ashcroft. Those would be two examples. As far as the government's ability to rebut a finding of past persecution, this court has often said that if the government did not put on evidence before the agency  will not remand to give the government a second chance at that. An example of that would be Ahmed versus Keisler is one of those cases, but there's numerous cases that have made that point. But we couldn't say that it had been rebutted, could we? No. What can we do with that? I think it doesn't just go away, does it? No, I think that if this court concludes that the government attribution prong is satisfied, then the boss have established that they were subject to past acts of persecution, which entitles them to the presumption that they were they have a wealth outage in the future. Right, and the government can rebut that. Except for here, the government did not present any evidence suggesting, for example, changed country conditions. So under at least some of this court's precedents, I don't think it's necessary for the court to remand for that determination if the government did not present that argument at the agency to begin with. They did present the argument that the Austrian government was trying to do sensitivity training for their police and so on. That is correct. Now, that argument was not based on changed country conditions. That was based on the country conditions that the BIA was analyzing at the time. There's a number of problems with that argument. The first, I would say, is under this court's precedents, such as Arfaie versus Holder, the BIA is not permitted to disregard sworn particularized testimony by pointing to generic statements in a country report. Indeed, the State Department here, report here is silent about the treatment of Romanians in Austria. Second, there's a second problem with that argument, and that is the fact that if you look at the report, the report actually states that persons from diverse ethnic and racial backgrounds were facing increasing discrimination from government officials, such as the police, at the time of the State Department reports. And I think the fact that the Austrian government had to offer these sensitivity training classes, in fact, corroborates the boss count. Let me ask you this. The IJ writes, there is no evidence that Mr. Kramer is a government official or that he had any diacrescence. Well, that's clearly wrong. There is evidence that he was the fire chief. So what do I do with the IJ's statement that if it's just a literal statement, there's no evidence he was a government, of course he was a government official. But is the IJ saying, well, he's not a government official in the sense that would be meaningful here because he was not in any way acting in his official capacity? I mean, beating up the boy has nothing to do with being the fire chief. Is that, I mean, how am I supposed to read that? So I would submit that if you read the IJ's opinion, there's no analysis of this question. I know. That's all there is. And so I think the IJ assumed that he was not a government official, but it's important to remember that these immigration asylum hearings, they hear the immigration judge hears the live testimony and then renders the oral decision immediately. And so she might have overlooked this issue. Now, whether she did or not, the boss in their appellate brief to the BIA pointed this issue out, and the BIA failed to consider it. What do we do? I know this is going to take you over time, but we'll give you a chance to respond. Thank you, Your Honor. What do we do with the fact that the doctor reports the injuries to the boy and then there's a proceeding against Mr. Cramer, there's a settlement offer which is too low, the prosecutor goes against Mr. Cramer and they get an award of 20,000 euros in change. That doesn't sound like government indifference or unwillingness to protect. What do I do with that? Well, I think if the court concludes that Chief Cramer is a government official because the test is disjunctive, that alone satisfies the government attribution requirement here. But even if the court goes the other route and looks at this in terms of willingness or able to control, this court has suggested that slap on the wrist punishments are not sufficient to demonstrate control. What exactly was the amount of the award against Mr. Cramer? So there's two numbers in the record. The first is 15,000 euros, which was the offer for an outer court. There was an award that was larger. It appears to be 24,000 in the record, but... So that's about $30,000. You know, this case has been pending for quite a while. I can't say what the exchange would have been at the time, but... That's roughly what it was at the time. Sure. And, you know, even if that sounds like a sum of money, I think for an ethnically motivated beating of a child that results in permanent disability, I think this Court can still conclude that that is just a woefully insufficient punishment for that type of attack. There was no criminal prosecution. Correct. Right. Correct. No criminal prosecution, no arrest at all. And, you know, if this Court looks at cases such as Shoa-Fera v. INS, in that case, the Court concluded it's unclear whether the person was a government official or not. The Court said that he was, but he was actually arrested and held for a month. And the Court said the asylum applicants were entitled to asylum in that case. Okay. Why don't we hear from the government, and then we'll give you a chance to respond. Thank you, Your Honors. May it please the Court. I'm Jonathan Robbins here on behalf of Jefferson Sessions, the United States Attorney General. Good afternoon, Your Honors. The key issue in this case is whether the record compels reversal of the agency's determination that petitioners failed to meet their burden of showing that the agency had failed to control any potential persecutors in this case. Was there an error of law? Let's start with that one first. An error of law with respect to what? Right. Well, the BIA didn't consider whether or not Cramer was a government official. They raised that issue. Well, Your Honor, they specifically said that he wasn't a government official. Who's they? I'm sorry. The Board did. They said he was a private actor. The immigration judge seemed to suggest. Where is it? Oh, I'm sorry. Help. Oh, I'm sorry. I'm sorry. The immigration judge. Yes. I'm sorry. The immigration judge. We're looking at the BIA. BIA. Correct. But it doesn't really end up mattering in this case, because. Why not? Well, would you agree that there's two ways in which you can satisfy the attribution problem? No. Why not? Because the what I guess you're referencing the requirement that you have to show it's either the government or the government being unable or unwilling to control. Yes. But the problem is, is that is a concept that has come up in the case law with respect to asylum and withholding of removal, with respect to defining persecution. Persecution is a term that is famously not defined in the INA. So what is developed in the case law is a sort of definition as to what constitute persecution. But the term refugee is defined in the INA. The term refugee is defined in the INA as, quote, one who is unable or unwilling to avail himself or herself of the protection of his or her native country because of persecution. So refugee has the persecution definition in there. But before you even get to persecution, you have to show that you cannot avail yourself of your country's help. And the record evidence in this case amply demonstrates the Petitioner was able to avail himself of the country's help here. Well, kind of, and in some circumstances. But I don't think what you said in any way contradicts the implicit statement in Judge Pai's question, because I think our case law says if it's a government official who does it, you've shown sufficient participation. If you've shown the government is unwilling or unable to control private actors, you've shown participation. That's what we're after. That's what that question was after. And I think that's what our case law says very clearly. I don't think so, Your Honor, because the case law is mirroring. Well, if you'll allow me to explain, that would run counter to some of the most basic concepts in United States refugee law. If the home government is able or willing to control one of its own actors, it defies what we understand about refugee law with respect to asylum being a relief of last resort. It's designed to be a form of relief that is only available when an alien has nowhere else to turn. If they can turn to their home country because the home country is willing to control one of its own actors, that renders surrogate protection of asylum unnecessary. International protection hasn't failed there. So that would run counter to some of the most basic. Well, I guess you're saying our case law is just counter to everything you're saying. No, no, no, Your Honor. Look, look, I don't want to argue with you about this point, but we've said, we've also just mentioned Babala. You know, we made it clear, we said when the government is responsible for persecution, the third prong of our asylum inquiry is satisfied without further analysis. Well, Babala is distinguishable in a couple of ways, Your Honor. First of all, in that case, the government said that based on the facts of that case and what had happened to Babala, that it could tacitly assume that there was governmental persecution. And there was a whole, I mean, the facts of that case with respect to the whole of the area that had all ganged up on Petitioner, there was no – there was no instance of evidence like in this case where we have direct evidence that when they went to the Austrian government for recourse, that they received recourse quite successfully, as Your Honor noted. And I would also dispute the fact that this was not criminal. If you look at page 361 of the record, this was brought by the public prosecutor of Graz in a criminal court. Now, I admit that the record is a little bit blurry about whether this was a civil or criminal proceeding, but the documents here suggest that it was filed in criminal court. I'm not – the record is devoid of evidence about how this works, exactly about why an award amount of that nature was awarded in a criminal proceeding. But it certainly was filed in criminal court according to the documentation in the record. Page what? Page 361. This is a document in the record brought by the public prosecutor of Graz. This is – it says it's a penalty request filed in the county court for criminal cases, not civil cases. And he – Kramer was charged with malfeasance of heavily bodily injury, was charged with malfeasance of duress, according to various subparagraphs in what I assume is an Austrian statutory code. And now, it does appear that they tried to reach some settlement that did involve money. So I'm not – it's not entirely clear from the record how exactly that works. And the amount of award goes to the family, correct? Correct. And – So it's not a fine in the way that we would understand a criminal fine. Correct. And – It looks like an awful lot like in function, a civil suit here. Now, they may have different labels for it, but it's a monetary award paid by Mr. Kramer to the family. Correct. And so – In this instance, actually not paid. I don't think there's any – Well, it wasn't – it was not paid because Petitioner's – It was paid. Yes, Your Honor, but it wasn't paid because Petitioner's didn't stay in Austria for them to resolve the exact amount that was paid, although there is indication here that there was an amount awarded in the amount of just over 24,000 euros. But, you know, and bear in mind here, I mean, not only is this direct evidence that the Austrian government is clearly acting as a deterrent to this type of behavior from people like Mr. Kramer, but we're talking about a first world European Union democracy here. There's no evidence in this record – this is a country that granted Petitioner's citizenship, that is clearly working to try and assimilate immigrants into its country, understanding that there is discrimination here. And of all the harms that went to Petitioner, remember here, the immigration judge only found there was one of those harms rose to the level of persecution. That was the harm to Daniel. And when they reported that single instance of persecution to the government, the government responded. And in fact, you know, the Austrian government is a country that works with the United Nations Commission for High – Office for the High Commission for Refugees to bring refugees into Austria. Refugees flee into Austria from other countries. So this – the notion that the government here – there's no evidence in this record to demonstrate that the Austrian government is engaging in persecution of people that it awards citizenship to. There's no indication that it's not willing or able to control groups that engage in discrimination that rises to the level of persecution when it gets into violence. I mean, this is not a situation where international protection has failed here, Your Honors. Well, you know, you can say all of those things, but if you sort of do the whole litany of what happened to this family, it's a pretty terrible story. And we'll just start – No doubt about it. With the fencing off of the property, they try to go to the city authorities who are absolutely unwilling to help. The girl gets beaten up at school. The principal laughs. I mean, the boy gets beaten up by the fire chief, serious injury, and there are more. I mean, it's – this is a horrible situation. I agree, Your Honor, that it's certainly discrimination and it's deplorable. I don't dispute that one bit. But I do take issue with your description of the facts on a couple of issues. For example, the property dispute. When they were asked, did you take this dispute to court, which – this is a property dispute. It's not persecution. It's discrimination, certainly, and it's not – it's not right. Don't get me wrong. But when they asked, did you take this to court, they said no. So this is a distinct – when they did take things to court, they won. And the reason they didn't take it to court? They believed they wouldn't be helped. But that is rebutted by when the time when they did go to court and did win an award. So there's – they were found to be speculatively – subjectively credible. Their beliefs were – appear to be genuine. But in terms of objective reasonableness, it's not objectively reasonable to suggest that the Austrian government here wasn't going to help them had they actually brought a claim with respect – I see that's – oh, I still have two minutes. Yes. I lost my train of thought there. Oh, there's – it's not objectively reasonable to assume the Austrian government wouldn't have helped them if they had filed a claim with respect to that property dispute. And again, that property dispute is not persecution. And you can't – and I know there's this whole argument being made with respect to cumulative persecution. But you can't accumulate discrimination that doesn't rise to the level of persecution into the persecution analysis. The immigration judge found that where there were instances of actual harm that rose to the level of persecution, there was only one instance that that was satisfied based on the objective evidence. And that was the harm to Daniel Booth. Yes. I'm sorry. You're laughing, but I – No, no, no, no. Let me ask you a question. Okay. I just – I want to focus for just one – one question. Let's assume for a minute that – and I don't know – I'm not speaking for my colleagues. This is just my question. Assume for a moment that I were to disagree with you about whether or not the BIA was required to address whether or not Kramer was acting as a government official. What do we do with the case? Well, like I said, based on refugee law, it wouldn't – if he was – no, if he was a government official, if you're finding that he was. No, I'm just saying the BIA did not address it. Correct. I would argue that it would be futile to send it back. Harmless. Yes, because even if he were a government official, Petitioners still can't establish that they're refugees. But doesn't the case law say that if a Petitioner makes an argument to the BIA, they need to address it? There is definitely a case law that says that, but to the extent – So if they made an argument to the BIA here, shouldn't it go back to the BIA so the BIA can address this issue? Well, respectfully, that's because if the board doesn't make a finding under these determinations that the board didn't make, but one of the well-established exceptions to Chenery is futility. So I would say that you don't have to send it back. And this is exactly that type of scenario, because even if you assume that – I would also note the record doesn't really demonstrate that this fire chief is a government official. It's vague. I mean, is this a volunteer fire department? It's not quite clear. It sounds like – the normal meaning of the fire chief is he's employed by the government. It's possible. The chief, it sounds like he's an official. It does sound that way, Your Honor, which is why I'm arguing about the futility as well. But I see that I'm over my time. Let me just go a little bit further down the remedy path. Let's say we find that the BIA was wrong in not addressing the government official question. Could we not then simply find that he was a government official? The IJ did consider it. We could look at what the IJ looked at and say, no, he was a government official. We don't need to remand. We find that he was. Alternatively, what if we find that the government didn't show that Austria was willing to control its people in this arena? Would we then – could we not then simply find to the contrary and grant the petition? Or would we then need to go on to the rebuttal of the presumption of future persecution? Could we not then find that there was no rebuttal, the government had its chance to put on a rebuttal, didn't put on any, and therefore grant the petition? Well, with respect to the rebuttal issue, there was rebuttal evidence granted. And the immigration judge actually made findings with respect to rebuttal. If you turn to page 139 of the record here, the immigration judge found, for example, that nor does it appear that the applicants would necessarily have to return to the area where the persons who harmed them live if they returned to that country. So that relates to one of the rebuttals that can be made is if the individuals can reasonably be expected to relocate within the country, that would rebut a presumption of future persecution. So there is a finding there that specifically rebutts the notion of past persecution. So if you were to find that the evidence supported a claim of – that petitioners suffered – that the Austrian government was willing or able to control the persecutors, the government – there is certainly rebuttal evidence in this record and findings by the immigration judge with respect to that rebuttal evidence that would also make remand futile again. So unless there are any further questions, I see I'm way over my time. Do we need to remand the question of government actor or the question of control of actors? I'm sorry, what? Do we need to remand the question of government actor or control of actors? Or could we simply make findings based on the record as it exists? True enough, the BIA didn't mention government actor, but the BIA affirmed the I.J. And the I.J. said he wasn't in the face of the information that he was the fire chief. So just arguendo, could we make either of those decisions without remand? Well, I don't think you can make specific factual findings. But if you were to find that there was an error in the analysis by the I.J. or the board, you could remand for findings that are consistent with – that resolve whatever error in the analysis there was. But you can't make – this Court can't make factual findings, if that's what you're asking. Based on the record? Based on the record, no. Neither can the board, for that matter. The board can't make factual findings either. Only the immigration judge can make factual findings on this under the appropriate standard of review. Okay. Thank you very much for your time, Your Honors. Would you put two minutes on the clock? A few brief points, Your Honors. First, this Court cannot make factual findings, but it can conclude that the record compels a particular conclusion, and it's done that numerous times in reverse the BIA or the I.J. Second, the speculation regarding whether a fire department could have volunteer fire chiefs is irrelevant to the questions before this Court. For example, the Department of Justice has volunteer AUSAs. They can still put you in prison. They're still government actors. So I don't think that needs to detain the Court on these questions. I think Bobala v. Ashcroft is abundantly clear that the test is disjunctive. But if the Court had any questions about that, if this Court had emphasized the same thing in other decisions, such as Avitova v. Eliseva, where this Court said we need not rely solely on the inability to control concept because there is compelling evidence that it leaves tacit government sponsorship and is involved in the harassment of Armenians. So I think that indicates that this Court views the test as two separate prongs. The government's arguments about European democracy and the surrogacy purposes of asylum, I don't think have any relevance to this review of a particular record in a particular case before the BIA. The asylum statutes are clear that when an asylum applicant has demonstrated that they were subjected to specific acts of past persecution where the government was unable or unwilling to control them or under the other prong of the test, if they were attributable to the government, that alone creates the presumption that they're entitled to asylum. This Court doesn't need to look at the democratic nature of Austria. I see my time has expired. Thank you, Your Honors. Thank both sides for good arguments. And before we finish up, the Court would like to thank Mr. Weeks, who's here as a pro bono attorney, and we very much appreciate your help. This is not a signaling to us as to who's going to win. It's rather a statement that we very much appreciate pro bono attorneys who come in and help out. Thank you. Thank you, Your Honors. Both versus or Both versus Sessions submitted for decision. The next argued case, Singh versus Sessions.
judges: W. Fletcher, Paez, Wilken